Case No. 1:16-cv-02283-TFH   Document 8   Filed 01/26/17   Page 1 of 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAWN J. BENNETT, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GOOGLE, INC., ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | Civil Action No. 1:16-cv-02283-TTH |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Dawn J. Bennett and DJ Bennett Holdings, LLC (Bennett), by and through their undersigned counsel, oppose the motion of defendant Google, Inc. (Google), to dismiss Bennett's complaint, and as grounds therefor state.

**NATURE OF CASE**

1. This is an action by Bennett against Google, a multinational technology company specializing in internet related services, for damages and equitable relief in connection with Google's publication of a blog by a former contractor of Bennett containing false and malicious personal attacks and harassment of Bennett and by permitting the blog to be artificially maintained in a favorable position increasing such harm to Bennett, all in violation of Google's publicly circulated guidelines prohibiting such activities.

2. Google filed a motion to dismiss the suit on the grounds that Bennett's claims are barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), which immunizes service providers, such as Google, from claims related to the content published by third parties,

Case No. 1:16-cv-02283-TFH Document 8 Filed 01/26//17 Page 2 of 7

and the blog was first published in 2014 more than a year ago and thus suit is time-barred. Dkt. ¶ 7.

## STATEMENT OF FACTS

3. In March, 2013, Bennett entered into a contract with Scott Pierson, a professed expert in Search Engine Optimization and Marketing ("SEO"), who claimed to be able to substantially increase Bennett's business by upgrading and otherwise improving Bennett's websites and business techniques. Dkt.#1 ,Compl. ¶¶6-7. A contract was signed, but it soon became apparent that Pierson exaggerated his expertise, instead of improving Bennett's operation he caused it to lose substantial business. The parties renegotiated their contract, and Pierson agreed to accept slightly less than $20,000 as full payment of any claims against Bennett. Id., ¶9.

4. Pierson's last payment under the agreement was sent to him in October, 2013, but returned by the post office as undeliverable. Investigation determined that Pierson had moved and failed to provide a forwarding address. Shortly thereafter, Pierson called Anderson McNeill, Bennett's Vice President and General Manager, complaining that he had not received his last payment. McNeill described Pierson as angry and out of control and threatening to shut down Bennett's websites: "I know things, I can do things, and I will shut down your website." McNeill explained to Pierson that his check had been sent and returned by the post office. Pierson provided his current address, and a new check was sent and cashed. Id., ¶¶9-10.

5. As threatened, Pierson created a blog which he named "DJ Bennett-think-twice-bad-business-ethics." Among other things, it stated that "DJ Bennett, the luxury sports goods

company, did not pay its employees or contractors" and is ruthlessly run by Dawn Bennett who operated Bennett Financial Services." The blog accused Dawn Bennett of inventing a lie that he had agreed to reduce his hours during the final phase of his project for DJ Bennett and then used it as justification for reducing his final invoice by $3,200. It went on to say that Pierson's attorney had told him that "Dawn Bennett is essentially judgment proof" and any money owed to him would be uncollectible. "The only thing we have learned, " added the blog, "is that DJ Bennet owes thousands and thousands to many people." " So I urge you to think twice before giving your patronage to DJ Bennett.com." The blog concluded by saying, "The website is pretty, but the person running the show is quite contemptible." Google published the blog. Id., ¶ 12.

6. Bennett retained an attorney to try and persuade Pierson to remove his blog. He refused. On May 23, 1016, a letter was sent to David C. Drummond, Google's Chief Legal Officer, pointing out that Pierson's blog violate Google's Content and Boundaries Policy against publishing blogs that harass and bully others. It was also pointed out to Drummond that, as of May 23, 2016, not a single comment had been received in two years, and Pierson was thus using black-hat tactics, also prohibited by Google's Guidelines, and universally condemned by the digital industry, to artificially maintain a favorable position for his blog. Drummond was asked to remove the blog; he ignored the letter, and several other efforts to get him to enforce Google's Guidelines. Correspondence was also sent to other senior Google executives, including its Chief Executive Officer, asking them to intervene to remove Pierson's blog. Nothing was ever done. Id., ¶ 13.

Case No. 1:16-cv-02283-TFH Document 8 Filed 01/26/17 Page 4 of 7

7. On November 16, 2016, Bennett filed this suit against Google to have Pierson's blog removed and for damages resulting from the adverse impact of Pierson's blog on DJ Bennett's business and Dawn Bennett personally.

## ARGUMENT

### A. Google's Publication of Pierson's Blog Is Not Protected By The Immunity Provisions Of The CDA

Section 230 of the Communications Decency Act provides, "No provider or user of any interactive computer service shall be treated as the publisher or speaker of any information provided by another information provider. Thus, interactive computer services, including websites social media platforms, and a variety of other digital services, cannot be held liable for the consequences of third-party content.

Section 230(c) provides, " No provider or user of an interactive computer service shall be held liable on account of any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected. Taken together the two provisions mean that Google has no duty to monitor for or to remove unlawful or objectionable material, and any good faith efforts in that direction cannot subject it to liability. Google may therefore remove from Pierson's blog material that it has characterized in its guidelines as objectionable and block, remove, or otherwise interfere with a blog whose position has been artificially maintained by black-hat tactics. ***Klayman v. Zuckerberg***, 753 F.3d 1352 (D.C. Cir. 2014); ***Blumenthal v. Drudge***, 992 F. Supp. 44 (D.D.C. 1998). But what courts have not fully addressed is where a service provider,

such as Google, adopts definitive prohibitions regarding the content of third-party user material, and does not enforce them, and the impact of such failure on Section 203(c) immunity. Stated another way, while a site may not have a legal obligation to remove unlawful or objectionable content from third party publishers, and is not liable if it elects to do so, does it create such an obligation for itself if it adopts guidelines of what it deems objectionable content and fails to follow through by enforcing such standards. This is the issue presented for the court. Bennett submits that a legal obligation to enforce its guidelines was created by Google, and it is now responsible to Bennett for the consequences of its inaction.

### B. <u>Bennett's Claims Are Not Barred By Statute of Limitations</u>

The statute of limitations for a defamation claim in the District is one year and begins to run from the date of initial publication, unless there is a modification of the content of the publication or the audience exposed to the offensive material in which case a new publication date is triggered. D.C. Code § 12-301(4); *Yankovic v. International Crisis Group,* 494 F.3d 1080 (D.C. Cir. 2007); *Jin v. Ministry of State Secretary*, 254 F. Supp. 61, 68 (D.D.C. 2003). The statute of limitations for breach of contract is three years D.C. Code § 12-301(7), and for claims that are not otherwise specifically designated also three years. D.C. Code § 12-301(8). Google argues that the one-year statute of limitations applicable to Bennett's defamation claim applies to all the claims because "intertwined" with the alleged defamation claim. Even if this were so, Bennett's defamation and emotional distress claims here are not affected because Pierson's constant adjustment of the position of his blog, thereby exposing its content to different audiences, reset the publishing date to within a year of the filing of this suit and it is not therefore time-barred. Similarly, the tortious interference claim is based on breach of contract as

Case No. 1:16-cv-02283-TFH   Document 8   Filed 01/12/17   Page 6 of 7

opposed to a personal tort grounds, subject to a three-year statute of limitations, and not time-barred either.

## CONCLUSION

For the reasons stated, Google's motion to dismiss Bennett's complaint is without merit and should be denied.

Respectfully submitted,

/s/Harry J. Jordan
Harry J. Jordan, Esq. (D.C. Bar No. 047860)
1101 17th Street, NW. Suite 609
Washington, DC 20036-4718
(202) 416-0216
hjjlaw@msn.com

Counsel for Plaintiffs
DJ Bennett Holding, LLC and
Dawn J. Bennett

Dated: January 26, 2017

## CERTIFICATE OF SERVICE

I hereby certify this 26th day of January, 2017, that a copy of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment was electronically filed with the Clerk of Court with a copy served by first class mail, postage prepaid, on John K. Roche, Perkins Coie LLP, 700 13th Street, NW, Suite 600, Washington, DC 20005-3960, Defendant's counsel.

/s/ Harry J. Jordan

Case No. 1:16-cv-02283-TFH Document 8 Filed 01/26/17 Page 7 of 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAWN J. BENNETT, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GOOGLE, INC., ) <br> ) <br> Defendant. ) <br> ) <br> _____) | Civil Action No. 1:16-cv-02283-TTH |

## ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiffs' Opposition thereto, and good cause found therefor, it is hereby

ORDERED, that the motion is Denied.

Dated:_____, 2017

_____
Thomas F. Hogan
Senior United States District Court Judge

Copies to:

Harry James Jordan
Counsel for Plaintiffs

John K. Roche
Counsel for Defendant