**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DAWN J. BENNETT, *et al*.,**

**Plaintiffs,**

**v.**

**GOOGLE INC.,**

**Defendant.**

**Civil Action No. 1:16-cv-02283-TFH**

**REPLY IN SUPPORT OF GOOGLE INC.'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs Dawn J. Bennett and DJ Bennett Holdings, LLC ("Plaintiffs") hope to avoid dismissal of their Complaint under the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), by asserting that this case raises the purportedly novel issue of whether Google has forfeited its immunity under the CDA by adopting guidelines for objectionable content that it allegedly does not enforce to Plaintiffs' satisfaction. This argument, however, is neither valid nor is it novel, as the D.C. Circuit and other courts over the years have rejected Plaintiffs' theory. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014) (rejecting the argument that a "statement allocating rights and responsibilities between interactive computer services and their users by itself gives rise to a heightened state-law duty of care in publishing" because one "cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit."); *see also Obado v. Magedson*, No. 13–2382 (JAP), 2014 WL 3778261, at *5 (D.N.J. 2014), *aff'd*, 612 Fed. Appx. 90 (3d Cir. 2015) (CDA required dismissal of claims against Google for allegedly failing to enforce its content policy); *Goddard v. Google Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *5 (N.D. Cal. Dec. 17, 2008) (same).

Plaintiffs further argue that their defamation and intentional infliction of emotional distress claims survive the applicable one-year statute of limitations because the limitations period has been reset to some indefinite date within the last year due to Scott Pierson's ("Pierson") alleged adjustment of the position of his blog. This argument is also unavailing because a third-party's effort to ensure wide distribution of an allegedly defamatory publication does not constitute a new publication for purposes of calculating the statute of limitations. *See Jankovic v. International Crisis Group*, 494 F.3d 1080, 1087 (D.C. Cir. 2007). Finally, Plaintiffs' argument that their tortious interference claim is subject to a three-year statute of limitations because it is based on breach of contract and therefore not "intertwined" with their other claims is specious because all their claims are premised on the same underlying facts, *i.e.*, Plaintiffs' allegations that they notified Google about Pierson's blog, yet Google did not remove it. *See Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002).

Accordingly, Google respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice because Plaintiffs' claims are barred by the CDA and the applicable one-year statute of limitations.

## II. ARGUMENT

### A. This Case Does Not Raise Any Novel Issues Under the CDA

Plaintiffs do not dispute that Google meets all the elements for CDA immunity: (i) Google is a "provider . . . of an interactive computer service," (ii) the information for which Plaintiffs seek to hold Google liable was "information provided by another information content provider," and (iii) the complaint seeks to hold Google liable as the "publisher or speaker" of that information. *Klayman*, 753 F.3d at 1357. Plaintiffs instead argue that their Complaint raises a purportedly novel issue that "courts have not fully addressed," namely, whether a service

provider forfeits its CDA immunity by adopting guidelines for objectionable content that it allegedly "does not enforce." Plaintiffs' Opposition, at 4-5 (ECF No. 8).

On the contrary, the D.C. Circuit has recognized that the CDA bars claims seeking to hold service providers to a heightened duty of care based on their adoption of guidelines for objectionable content. *See Klayman*, 753 F.3d at 1359-60 (rejecting the argument that a "statement allocating rights and responsibilities between interactive computer services and their users by itself gives rise to a heightened state-law duty of care in publishing" because one "cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit."). The CDA thus "allows [providers] to establish standards of decency without risking liability for doing so." *Ramey v. Darkside Prod., Inc.*, No. 02–730 (GK), 2004 WL 5550485, at *6 (D.D.C. 2004) (quoting *Green v. Am. Online, Inc*., 318 F.3d 465, 472 (3d Cir. 2003) (dismissing claims against AOL for allegedly failing to enforce its member agreement)). Under Plaintiffs' theory, however, Google is at risk of liability for establishing standards of decency that Plaintiff believes Google does not adequately enforce. This would create a powerful disincentive for Google or any other service provider to establish any standards of decency or to ever voluntarily remove objectionable content, which is precisely what Congress sought to avoid by conferring service providers with immunity under the CDA. *See Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C.1998) ("Congress enacted § 230 to remove . . . disincentives to self-regulation[.]") (quoting *Zeran v. America Online, Inc*., 129 F.3d 327, 331 (4th Cir. 1997)); *see also Zeran*, 129 F.3d at 333 ("Any efforts by a service provider to investigate and screen material posted on its service would only lead to notice of potentially defamatory material more frequently and thereby create a stronger basis for liability. Instead of subjecting themselves to further possible lawsuits, service providers would likely eschew any

attempts at self-regulation."). Accordingly, Plaintiffs' argument is neither valid nor is it novel, as the D.C. Circuit and multiple other courts over the years have rejected this stale and unsupported theory of liability. *See Klayman*, 753 F.3d at 1359-60; *Obado*, 2014 WL 3778261, at *5, *aff'd*, 612 Fed. Appx. 90 (3d Cir. 2015) (CDA required dismissal of claims against Google for allegedly failing to enforce its content policy); *Goddard*, 2008 WL 5245490, at *5 (same).

Plaintiffs' claims are barred by the CDA, and Plaintiffs cite no authority to support their warmed-over theory that Google has somehow forfeited its CDA immunity. If Plaintiffs think they have been injured by Pierson's blog, their remedy is to sue Pierson, not Google. *See Blumenthal*, 992 F. Supp. at 51 (the CDA does not prevent suit against "the original culpable party who posts defamatory messages") (quoting *Zeran*, 129 F.3d at 330).

**B. Plaintiffs' Claims Are Barred by the One-Year Statute of Limitations**

Plaintiffs concede that a one-year statute of limitations applies to their defamation and intentional infliction of emotional distress claims, but argue that the date upon which the statute of limitations begins to run has been "reset" to some indefinite date "within a year of the filing of this suit" due to "Pierson's constant adjustment of the position of his blog, thereby exposing its content to different audiences[.]" Plaintiffs' Opposition, at 5 (ECF No. 8). The D.C. Circuit, however, has recognized that a third-party's copying of a print article "even for wide distribution—does not constitute a new publication" and "[t]he equivalent occurrence should be treated no differently on the Internet." *Jankovic*, 494 F.3d at 1087. That is the situation here. Plaintiffs vaguely allege that since 2014 a third-party, *i.e.*, Pierson, has taken some ambiguous steps to ensure that copies of his unaltered blog are available for wide distribution on the Internet. Even if true, those facts have no bearing on the date upon which Google allegedly first published the blog in 2014, and Pierson's independent conduct to purportedly ensure the

unaltered blog is available for maximum distribution on the Internet has no effect on the statute of limitations with respect to Plaintiffs' claims against Google.  *See, e.g., Jin v. Ministry of State Security*, 254 F. Supp. 2d 61, 69 (D.D.C. 2003) (rejecting plaintiffs' argument that the statute of limitations applicable to defendant's publication of a video was tolled by "subsequent re-broadcasts or dissemination" by third parties).

Plaintiffs further argue that their tortious interference claim is subject to a three-year statute of limitations because it "is based on breach of contract" rather than tort, and is therefore not "intertwined" with their defamation and intentional infliction of emotional distress claims for purposes of calculating the statute of limitations.  Plaintiffs' Opposition, at 5-6 (ECF No. 8). Plaintiffs again cite no authority for this argument, because there is none.  Claims are "intertwined" for purposes of determining the applicable statute of limitations "when they are based on the same underlying facts[.]"  *Browning*, 292 F.3d at 244 (citing *Mittleman v. United States*, 104 F.3d 410, 415–17 (D.C. Cir. 1997)).  Plaintiffs' defamation and tortious interference claims are both premised on Plaintiffs' allegations that they notified Google about Pierson's blog, yet Google did not remove it.  *See* Complaint, ¶ 18 (alleging Google is liable for defamation because it "continued to carry Pierson's blog after plaintiffs' counsel repeatedly alerted it of the factual distortions and malicious intent of Pierson's blog and his abuse of the internet process to distort public interest in his blog.  Google therefore shares in the responsibility with Pierson in plaintiffs' financial damages."); *id.* ¶ 25 (alleging Google is liable for tortious interference because it "was aware of plaintiffs' complaints that Pierson's blog was factually false and a malicious vendetta") (ECF No. 1).  Plaintiffs' defamation and tortious interference claims are thus "intertwined," and because "tortious interference with business expectancy claims have no prescribed statute of limitations, [the Court] must apply the one-year

statute for defamation." *Browning*, 292 F.3d at 244. Accordingly, all of Plaintiffs' claims are barred under the statute of limitations because they were filed over two years after the blog was first published. *See* Exhibit 1 to Google's Motion to Dismiss (ECF No. 7-1).

## III. CONCLUSION

For the reasons stated here and in Google's Motion to Dismiss, Google respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: February 2, 2017

Respectfully submitted,

By: /s/ John K. Roche

John K. Roche (D.C. Bar. No. 491112)
PERKINS COIE LLP
700 13th St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202-434-1627
Fax: 202-654-9106
JRoche@perkinscoie.com

Attorneys for Google Inc.

**CERTIFICATE OF SERVICE**

I hereby certify this 2nd day of February, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals:

Harry James Jordan
LAW OFFICES OF HARRY J. JORDAN
1101 17th Street, NW, Suite 609
Washington, DC 20036
(202) 416-0216
Fax: (202) 296-1370
Email: hjjlaw@msn.com

*Counsel for Plaintiffs*

By: /s/ John K. Roche
John K. Roche (D.C. Bar. No. 491112)
PERKINS COIE LLP
700 13th St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202-434-1627
Fax: 202-654-9106
JRoche@perkinscoie.com

Attorneys for Google Inc.